[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 139.]

THE STATE EX REL. EWART, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO
ET AL., APPELLEES.

[Cite as *State ex rel. Ewart v. Indus. Comm.*, 1996-Ohio-316.]

*Workers' compensation—Industrial Commission's order denying application for
permanent total disability compensation upheld by Supreme Court, when.*

(No. 94-1688—Submitted May 21, 1996—Decided July 24, 1996.)

APPEAL from the Court of Appeals for Franklin County, No. 93APD07-936.

————————————

{¶ 1} Appellant-claimant, William Ewart, was injured on August 9, 1982
while in the course of and arising from his employment with appellee Refiners
Transport and Terminal. His workers' compensation claim was initially allowed
for "acute low back strain." All treatment for that condition has been conservative.
The claim was later allowed for "functional overlay; depressive disorder." There
is no evidence of record that claimant has ever been treated for either psychological
condition.

{¶ 2} Claimant applied to appellee Industrial Commission of Ohio for
permanent total disability compensation in 1989. Dr. Paul H. Dillahunt performed
a combined effects review and concluded that claimant had a sixty-two percent
permanent partial impairment. He felt that claimant could not resume his job as a
trucker but could do other sustained remunerative work.

{¶ 3} Two rehabilitation reports were presented. The first, prepared by
Ginny Linder, a rehabilitation counselor at the University of Florida, concluded:

"Mr. Ewart impressed me as an intelligent individual with restrictions in his
ability to bend, lift, stand, etc. He seemed convinced of his inability to obtain non-
truckdriver employment based on his limited work experience, age, and history of
injury/restrictions. Having worked and enjoyed tanker driving for many years, he

appeared to have little confidence in his ability to get other jobs and seemed reluctant to consider applying his skills to other areas. His cognitive aptitude and achievement scores were strong and could be applied to jobs more suitable to his limitations with a willing employer. While finding a job may be difficult due to the factors he mentioned, it cannot be done until he believes more in himself."

{¶ 4} Dr. Naomi Waldbaum at the commission's W.O.Walker Industrial Rehabilitation Center also prepared a report. The only physical difficulty observed was claimant's complaint of "mild chronic low back pain." No psychiatric impediment to retraining was noted. The rehabilitation division, on May 31, 1991, however, closed claimant's file, stating:

"The results of the vocational evaluation indicate that Mr. Ewart presents with poor rehabilitation potential. Mr. Ewart has a 22 year work history as a truck driver and presents with few transferrable skills. He has above average general learning ability and verbal ability, however, he has not worked in nine years, and at age 56 he is a poor candidate for retraining."

{¶ 5} The commission, following a hearing on February 7, 1992, denied permanent total disability compensation, writing:

"The reports of Drs. Yosowitz, Katz, Haude, Greenspan, and Dillahunt were reviewed and evaluated. This order is based particularly upon the report of Dr. Dillahunt, evidence in the file and the evidence adduced at the hearing.

"The report of Dr. Dillahunt, which addresses the issue of combined effects from the allowed conditions, was found persuasive as to the claimant's medical presentation and the claim. This report is the most recent on file and found a sixty-two percent total body impairment that did not prevent the claimant from engaging in sustained remunerative employment. The Commission finds this level of impairment to equate to permitting sedentary employment. The Commission further finds that the claimant's high school education and work history are indicative of being able to participate in vocational retraining. Supportive of this

conclusion is the May 31, 1991 report of the Walker Center which indicated that claimant has above average general learning ability and verbal ability. As such, the Commission concurs that the claimant would be able to undertake retraining and utilize any acquired skills on a sustained basis. This is so despite the conclusion reached by the Walker Center who felt that claimant's failure to work in nine years made him a poor candidate."

{¶ 6} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying permanent total disability compensation. The court of appeals denied the writ.

{¶ 7} This cause is now before this court on appeal as of right.

––––––––––––––––––

*Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy* and *Marc J. Jaffy; Hahn & Swadey* and *Victor Hahn*, for appellant.

*Betty D. Montgomery*, Attorney General, and *William McDonald*, Assistant Attorney General, for appellee Industrial Commission. *Weiner & Suit Co., L.P.A.*, and *Thomas S. Amato*, for appellee Refiners Transport and Terminal.

––––––––––––––––––

**Per Curiam.**

{¶ 8} Claimant seeks to compel a finding of permanent total disability compensation pursuant to *State ex rel. Gay v. Mihm* (1994), 68 Ohio St.3d 315, 626 N.E. 2d 666. For the reasons to follow, we uphold the commission's order.

{¶ 9} The commission found that claimant's high school education, work history and above-average learning and verbal skills favored the acquisition of new skills that could enhance claimant's re-employment prospects. Based on the same data, however, the W.O. Walker Industrial Rehabilitation Center found claimant to be a poor rehabilitation candidate. Claimant argues that the commission abused its discretion in accepting the findings, but not the conclusion, of its rehabilitation center.

**{¶ 10}** The commission may reject the conclusion of a rehabilitation report and draw its own conclusion from the same nonmedical information. See *State ex rel. Rodriguez v. Indus. Comm.* (1993), 67 Ohio St.3d 210, 616 N.E. 2d 929. "To bind the commission to a rehabilitation report's conclusion makes the rehabilitation division, not the commission, the ultimate evaluator of disability, contrary to [*State ex rel.*] *Stevenson* [*v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E. 2d 946]." *State ex rel. Ellis v. McGraw Edison Co.* (1993), 66 Ohio St.3d 92, 94, 609 N.E. 2d 164, 165.

**{¶ 11}** The freedom to independently evaluate nonmedical factors is important because nonmedical factors are often subject to different interpretation. We have already recognized this fact with regard to age and education. As stated in *Ellis*:

"The commission exercised its prerogative in concluding that, at age fifty-one, claimant was young, not old, and that his age was a help, not a hindrance. So, too, is the conclusion with regard to claimant's education, which also derives support from the record. More so than claimant's age, his education can be interpreted as either an asset or a liability. While his grade school level spelling and below-average reading ability clearly can be perceived negatively, the same rehabilitation report that determined these academic skills to be a limitation nonetheless concluded that his high school education was an asset. The commission was persuaded by the latter conclusion." *Id.* 94, 609 N.E.2d at 165-166.

**{¶ 12}** The same can be said in this case with regard to claimant's work history. Claimant worked for Refiners Transport and Terminal as a trucker for twenty-two years. Claimant's long tenure can be viewed negatively because it prevented the acquisition of a broader range of skills that more varied employment might have provided. It also, however, suggests a stable, loyal and dependable

employee worth making an investment in. This is an asset and is an interpretation as valid as the first.

{¶ 13} Claimant's lack of transferable skills also does not mandate a permanent total disability compensation award. A permanent total disability compensation assessment examines both claimant's current and future, *i.e.*, potentially developable, abilities. An absence of transferable skills is germane to this inquiry. However, as the appellate court referee observed, "the nonexistence of transferable skills from relator's truck driving experience would not be of critical importance when the issue becomes whether the claimant can be retrained for another occupation."

{¶ 14} The commission did not, therefore, abuse its discretion in viewing claimant's education, work history and skills favorably. The commission's explanation in this case is found to satisfy *State ex rel. Noll v. Indus. Comm.* (1991), 57 Ohio St.3d 203, 567 N.E. 2d 245, negating claimant's request for *Gay* relief. *State ex rel. Sebestyen v. Indus. Comm.* (1995), 71 Ohio St.3d 36, 641 N.E. 2d 197.

{¶ 15} Claimant lastly argues that the commissioners' internal voting sheet demonstrates that the commission "really" based its decision on medical evidence only, without considering claimant's nonmedical background. This contention is unpersuasive. The commission speaks through its orders, not internal memoranda. *State ex rel. Yellow Freight System, Inc. v. Indus. Comm.* (1994), 71 Ohio St.3d 139, 642 N.E. 2d 378. The commissioners signed and approved the permanent total disability compensation order, thereby ratifying the reasoning contained within it. The order, therefore, represents the commission's reasons for denial.

{¶ 16} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and STRATTON, JJ., concur.

DOUGLAS AND RESNICK, JJ., dissent.

———————————